MYRTLE C. VAN KEUREN, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF EDWARD D. VAN KEUREN, DECEASED, PLAINTIFF, v. ERIE RAILROAD COMPANY, A CORPORATION; BENJAMIN J. BLAKNEY AND THEODORE ROMAINE, DEFENDANTS.

Decided December 8, 1931.

Before LAWRENCE, Circuit Court judge.

For the rule, *Hobart & Minard* (*Ralph E. Cooper*).

*Contra, Alexander Simpson.*

LAWRENCE, S. C. C. This suit was tried before me and a jury at the Morris Circuit and resulted in a verdict in favor of plaintiff for $17,500. It was brought in behalf of the widow and next of kin of Edward D. Van Keuren, under the Death act. The accident involved occurred at the North Newark station of defendant company. Mr. Van Keuren, who had been a commuter to and from the station for a number of years, while crossing from the south to the north platform, on the plank pathway provided for passengers over the tracks, was struck by the train which he had intended to take as it came in on the westbound track. He received injuries of which he died.

Defendants argue for a new trial on several grounds, chiefly that the verdict was contrary to the weight of the evidence, of decedent's contributory negligence, and that the sum awarded is excessive. Certain exceptions taken during the trial to the court's rulings, to the qualified admission of a written statement of the fireman on the engine, made shortly after the accident, and to the charge of the court were also discussed on the argument and in the brief.

The factual situation as disclosed by the evidence may be generally stated to have been that Mr. Van Keuren had gone to the station, in accordance with his custom, to take a late afternoon train for his home. He had a commutation ticket and his relation to the company as a passenger at the station with the right to transportation was admitted. The tracks and station are elevated above the adjacent street. To reach them, the passenger mounts a stairway to the south platform where the ticket office and waiting rooms are located, immediately in front of which runs an eastbound track. Opposite is a westbound track and a platform for passengers getting on and off trains going in that direction. To get to the north platform, it is necessary to cross these tracks, a plank walk being provided and maintained by the company for that purpose.

At the time of the accident, Mr. Van Keuren, who had been standing on the south platform, was seen to start across the tracks on this walk and had reached the north rail of the westbound track when he was struck in the back by the end of the brake beam on the right side of the engine of the approaching train and thrown on to the north platform against a concrete post, the impact breaking it. The engineer testified that he was on the right side of the engine and did not see Mr. Van Keuren until he was struck; that the train was going twenty-five miles an hour, and that if necessary it could have been stopped within eighty feet, but that he did not apply the brakes until at the place where the accident happened, which was his custom, because he had no knowledge that anyone was attempting to cross the track. He had given, he said, the usual crossing signal about three hundred yards away and the engine bell was ringing.

The fireman, who was on the left side of the engine, and who could not apparently be produced as a witness at the trial, had made a written statement shortly after the accident which was put in evidence. The substance of it was that the train was going twenty-five to thirty miles an hour, and when the engine was about one hundred and fifty feet away, he saw a man start across the eastbound track, "using the wooden platform which crosses the tracks at that point;" that the man was walking and "in his opinion" had plenty of time to get over; the first that he knew that "he had not made it" was when the engineer put on the emergency application of air and the train came to a stop. He (the fireman) had said nothing to the engineer "about the man crossing over, it being common practice for the people to run over from one side to another in front of train and engines," reiterating that "in my opinion the man had plenty of time to cross." He further stated that the usual crossing signal had been given and that the engine bell was ringing. This written statement was allowed to go to the jury, with the cautionary statement of the court, in effect, that a mere expression of opinion was not evidential of a fact to be proven, but that if the statement as a whole, in other respects, was found to be

a narrative of what the fireman had seen, such weight and credence should be given it as the jury felt it deserved and as though he had been produced and examined as a witness at the trial. Other witnesses on the north platform or in the vicinity testified as to features of the accident observed by them, not materially differing from the statement of the occurrence given above.

A review of the evidence leads to the conclusion that the negligence charged in the operation of the train at the time was clearly a jury question, likewise the alleged contributory negligence of Mr. Van Keuren. It is said that the rule of duty at a public crossing has no application to a case where, by the arrangement of the company, it is made necessary for passengers to cross a track in order to reach the station or the cars. Pertinent authority on the points here raised will be found in *Bradley* v. *Erie Railroad Co.,* 106 *N. J. L.* 51, and the cases cited, including *Jewett* v. *Klein,* 27 *N. J. Eq.* 550. In the circumstances, it cannot be said that the jury erred in its verdict, either on the issue of negligence or contributory negligence. In any event, it is not so clearly against the weight of the evidence as to justify disturbing it.

It is next urged that the amount awarded is excessive. This appears to be so. Mr. Van Keuren at the time of his death was sixty-seven years of age, with a life expectancy of ten years. He earned $3,600 a year, two-thirds of which went to the home and one-third to him. Calculating the financial advantage which would have accrued to the widow and next of kin, on this basis, had he not been killed, the maximum possible verdict would approximate the sum of $15,000. If, therefore, plaintiff consents to a reduction to this amount, the rule to show cause will be discharged, otherwise it will be made absolute.

In conclusion, it is to be observed that there was no evidence in the case justifying the inclusion of Theodore Romaine as a party defendant. He appears to have been the conductor of the train involved and was in nowise connected with the accident. This was conceded on the argument of the rule and the verdict should be set aside as to him.